UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN TESSANNE, et al., | ) | Case No. 5:22-cv-00354-CEF |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | |
| | ) | DEFENDANT'S MOTION TO DISMISS |
| CHILDREN'S HOSPITAL MEDICAL CENTER OF AKRON, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Defendant, Children's Hospital Medical Center of Akron ("Defendant" or "Akron Children's Hospital"), respectfully requests that this Court dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). The Complaint fails to state a claim under the First Amendment of the United States Constitution because Defendant is not a government actor, and there is no statutory or common law basis providing subject-matter jurisdiction for Plaintiffs' claim. Accordingly, Defendant asks this Court to dismiss Plaintiffs' Complaint in its entirety. A memorandum in support is attached.

{04074273 - 1}

Respectfully submitted,

*/s/ Mark I. Wallach*
Mark I. Wallach (Reg. No. 0010948)
 Email: mwallach@walterhav.com
 Direct Dial: 216-928-2939
Russell T. Rendall (Reg. No. 0089901)
 Email: rrendall@walterhav.com
 Direct Dial: 216-658-6237
Alexandra C. Eckrich (Reg. No. 0099133)
 Email: aeckrich@walterhav.com
 Direct Dial: 216-658-6234
WALTER | HAVERFIELD LLP
The Tower at Erieview
1301 E. Ninth Street, Suite 3500
Cleveland, Ohio 44114

*Attorneys for Defendant*
*Children's Hospital Medical Center of Akron*

{04074273 - 1}

## MEMORANDUM IN SUPPORT

**I.     Introduction**

Plaintiffs' Complaint sets forth a single count against Defendant, Akron Children's Hospital: "Violation of the Free Exercise Clause of the First Amendment to the United States Constitution (Asserted under 28 U.S.C. § 2201, *et seq.*)." Plaintiffs allege that Defendant infringed on their constitutional rights by implementing a COVID-19 vaccine policy for its employees and then denying their requests for religious exemption from that policy. However, Akron Children's Hospital is a private entity and has not acted under color of federal law with respect to its COVID-19 policy or decisions regarding religious exemption requests. Accordingly, Plaintiffs have failed to state a claim upon which relief may be granted and the Complaint must be dismissed under Fed. R. Civ. P. 12(b)(6).

In addition, Plaintiffs allege that this Court has subject-matter jurisdiction over their claims based on federal question jurisdiction under 28 U.S.C. § 1331 and civil rights jurisdiction under 28 U.S.C. § 1343. However, Plaintiffs have failed to assert a cognizable cause of action under federal statutory or common law, and thus there is no basis for jurisdiction. Accordingly, Plaintiffs' Complaint is also subject to dismissal under Fed. R. Civ. P. 12(b)(1), due to a lack of subject-matter jurisdiction.

**II.    Factual Background and Plaintiffs' Allegations**

    **A.     The COVID-19 pandemic prompted development of multiple vaccines to combat the virus.**

Plaintiffs' Complaint (ECF #1) acknowledges that, by spring 2020, COVID-19 was a worldwide pandemic. (Compl. ¶ 18.) At least three vaccines were developed to combat COVID-19, including the Pfizer, Moderna, and Johnson & Johnson vaccines, which obtained emergency use authorization ("EUA") from the U.S. Food and Drug Administration ("FDA") in late 2020

and early 2021. (Compl. ¶ 19.) Pfizer obtained full FDA approval of its vaccine on August 23, 2021. (Compl. ¶ 20.) Although the Complaint neglects to mention it, Moderna also obtained full FDA approval of its vaccine on January 31, 2022.[1]

### B. CMS issued a rule requiring many healthcare providers, including Akron Children's Hospital, to ensure vaccination of employees against COVID-19.

On November 5, 2021, the Centers for Medicare and Medicaid Services ("CMS") issued an Interim Final Rule on COVID-19 Vaccinations in Healthcare Settings ("CMS Mandate"), requiring employees at CMS-certified healthcare facilities to be vaccinated against COVID-19.[2] Initially, the CMS Mandate was to go into effect on December 5, 2021, but legal challenges delayed enforcement in Ohio and other states until February 14, 2022 (first dose deadline) and March 15, 2022 (second dose deadline).[3] (Compl. ¶¶ 2, 3.) As an employer with workers in CMS-certified facilities, Akron Children's Hospital must comply with the CMS Mandate, which generally requires that it ensure vaccination of its staff, unless they are legally entitled to an exemption. (*See* CMS Mandate.) The CMS Mandate offers no option for employers to permit employees to undergo regular COVID-19 testing in lieu of vaccination. (*Id.*)

### C. Akron Children's Hospital adopted a COVID-19 vaccine policy consistent with the CMS Mandate.

Consistent with the CMS Mandate, Akron Children's Hospital adopted a policy in November 2021 requiring employees to get vaccinated against COVID-19. (Compl. ¶ 23.) This COVID-19 vaccine policy allows for exemptions based on medical or religious reasons, if the law requires. (Compl. ¶ 24.) Akron Children's Hospital set a deadline for employees to get vaccinated or obtain an exemption by January 11, 2022, approximately two months after the

---

[1] *See* FDA news release, available at https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-takes-key-action-approving-second-covid-19-vaccine.
[2] *See* CMS Mandate, available at www.govinfo.gov/content/pkg/FR-2021-11-05/pdf/2021-23831.pdf.
[3] On January 14, 2022, CMS published a memo regarding enforcement of the CMS Mandate following the lifting of the federal court injunction staying the rule, available at www.cms.gov/files/document/covid-19-health-care-staff-vaccination-requirements-infographic.pdf.

policy was promulgated *and well in advance of the deadline* under the CMS Mandate. (Compl. ¶ 4.) The COVID-19 vaccine policy provided that continued noncompliance would result in termination of employment effective January 27, 2022. (Compl. ¶ 7.) Employees were given the opportunity for reinstatement if they provided proof of vaccination by February 27, 2022. (Compl. ¶ 7.) Plaintiffs Tessane and Brimer submitted requests for religious exemption from the COVID-19 vaccine policy, which were denied. (Compl. ¶¶ 15, 16.) The Complaint does not indicate when they submitted such requests nor does it provide any explanation of the basis for their requests, except to say that they were "based on their sincerely held Christian beliefs." (Compl. ¶ 25.) In fact, Plaintiffs' Complaint spends substantially more effort arguing that COVID-19 vaccines are not *medically* necessary. (Compl. ¶ 43.) Tessane and Brimer continued to refuse the COVID-19 vaccine, and thus their employment with Akron Children's Hospital terminated January 27, 2022, due to noncompliance with the COVID-19 vaccine policy. (Compl. ¶¶ 15, 16.)

        **D.    Plaintiffs' Complaint contains a number of false and unsupported statements.**

Plaintiffs' Complaint contains a number of false, unsupported statements and conclusions which should be disregarded by the Court in ruling on this Motion to Dismiss.

Plaintiffs' allegations regarding "natural immunity" and the contention that those who have recovered from COVID-19 "have more protection against infection than those who have only been vaccinated" have no basis in fact. (Compl. ¶¶ 1, 43.) Indeed, a review of the CDC resource cited by Plaintiffs in their Complaint shows that this is a complete misunderstanding and misrepresentation of the research:

> These results demonstrate that vaccination protects against COVID-19 and related hospitalization, and that surviving a previous infection protects against a reinfection and related hospitalization. Importantly, infection-derived protection was higher after the Delta variant became predominant,

> a time when vaccine-induced immunity for many persons declined because of immune evasion and immunologic waning (*2*,*5*,*6*). Similar cohort data accounting for booster doses needs to be assessed, as new variants, including Omicron, circulate. Although the epidemiology of COVID-19 might change with the emergence of new variants, **vaccination remains the safest strategy to prevent SARS-CoV-2 infections and associated complications**; all eligible persons should be up to date with COVID-19 vaccination.

*COVID-19 Cases and Hospitalizations by COVID-19 Vaccination Status and Previous COVID-19 Diagnosis — California and New York, May–November 2021*, Jan. 28, 2022 (emphasis added), available at www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1_w.

Further, the COVID-19 vaccines available to Plaintiffs are not "experimental" as asserted in the Complaint. (Compl. ¶ 16.) And, although the vaccines were initially authorized under an EUA, both the Pfizer and Moderna vaccines now have full FDA approval, contrary to Plaintiffs' allegation that "the FDA has not issued any other injection approvals." (Compl. ¶ 21.)

In addition, Plaintiffs' allegation that their religious exemption requests—*and the religious exemption requests of all other similarly situated employees*—were "flatly rejected" or "summarily denied" has no basis in fact. (Compl. ¶¶ 1, 25.) Defendant will refrain from offering rebuttal evidence in the context of its Motion to Dismiss, but for purposes of the motion it is sufficient to state that Plaintiffs do not have knowledge of the nature, disposition, or internal deliberations related to all the religious exemption requests submitted to Akron Children's Hospital in connection with the COVID-19 vaccine policy. Accordingly, the Court should disregard Plaintiffs' conclusory and unsupported accusations regarding these issues.

## IV. LAW AND ARGUMENT

### A. Legal Standard for Motion to Dismiss under Rule 12(b)(6)

A motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) tests the sufficiency of the complaint. In order to survive a motion to dismiss, "a complaint must contain

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Moxley v. Pfundstein*, 801 F.Supp.2d 598, 602 (N.D. Ohio 2011) ("A complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory.").

The Court need accept only the Complaint's *well-pleaded factual allegations* as true. *Nwanguma v. Trump*, 903 F.3d 604, 607 (6th Cir. 2018). Unsupported conclusions are not sufficient to withstand a motion to dismiss. *Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555; *Gonzalez v. Kovacs*, No. 1:16CV277, 2016 WL 9000743, at *3 (N.D. Ohio Aug. 1, 2016), *aff'd*, 687 Fed. Appx. 466 (6th Cir. 2017) ("It is not sufficient, even at the motion-to-dismiss stage, to make only such vague and conclusory assertions without factual support."); *Hunter v. Tallman*, No. 1:18CV2122 2019 WL 1863694, at *2 (N.D. Ohio Apr. 24, 2019) ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.").

B. **Legal Standard for Motion to Dismiss under Rule 12(b)(1)**

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) challenges a federal court's subject-matter jurisdiction. Under Rule 12(b)(1), "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996); *United States v. Richie*, 15 F.3d 592, 598 (6th Cir. 1994). "Lack of subject-matter jurisdiction may be found in the complaint alone, the complaint supplemented by the undisputed facts as evidenced

in the record, or the complaint supplemented by the undisputed facts plus the court's resolution of the disputed facts." *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 668 F.3d 281, 287 (5th Cir. 2012).

### C. Plaintiffs' Complaint fails to state a plausible First Amendment claim because Akron Children's Hospital is not a federal government actor.

Plaintiffs allege that Akron Children's Hospital's COVID-19 vaccine policy violates the Free Exercise Clause of the First Amendment of the U.S. Constitution. In support of that claim, Plaintiffs assert in an entirely conclusory manner that Akron Children's Hospital is a government actor simply because it implemented its policy in compliance with the CMS Mandate:

> 6. Defendant's policy was occasioned by the mandates of the Federal Government and the threats that underly those mandates, namely that the institutions may be ineligible to receive Medicare and Medicaid money if they do not enforce compliance. Thus, the Federal Government's mandates *provide such significant encouragement* that Defendant's actions regarding the SARS-CoV-2 injection mandates and exemptions are deemed in law to be that of the government. *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992).
>
> * * *
>
> 27. Defendant implemented its policy and terminated Plaintiffs according to the mandates and guidance set forth by the Federal Government; Defendant, though a private entity, is a federal actor.
>
> * * *
>
> 39. As shown above, Defendant is a governmental actor. Its actions as set forth herein were all undertaken in accordance with policies, practices, customs, and procedures created, adopted, and enforced under color of federal law.

(Compl. ¶¶ 6, 27, 39.)

It is well-established that the First Amendment "prohibits only governmental abridgment" of free religious exercise. *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1928 (2019). Indeed, "without establishing that Defendants are [government] actors, Plaintiffs'

constitutional claims cannot stand." *Harsman v. Cincinnati Children's Hosp. Med. Ctr.*, 2021 WL 4504245, at *3 (S.D. Ohio Sept. 30, 2021) (quoting *Beckerich v. St. Elizabeth Med. Ctr.*, 2021 WL 4398027, at *3 (E.D. Ky. Sept. 24, 2021)).

District courts addressing recent vaccine mandate litigation have enforced a "line between [government] action subject to [constitutional] scrutiny and private conduct (however exceptionable) that is not." *Harsman*, 2021 WL 4504245 at *3 (quoting *Beckerich*, 2021 WL 4398027 at *3); *Sambrano v. United Airlines, Inc.*, No. 4:21-cv-1074-P, 2021 WL 5176691, at *5 (N.D. Tex. Nov. 8, 2021) (reversed and remanded on other grounds) ("The Court likewise declines to elevate statutory protections from private-company-discrimination to the level of constitutional protections from government encroachment.").

Akron Children's Hospital is indisputably not a federal government actor, even when viewing the factual allegations in a light most favorable to Plaintiffs. The Complaint alleges that Akron Children's Hospital's policy was "occasioned" by the CMS Mandate (Compl. ¶ 6), that the federal government provided "significant encouragement" for the policy (Compl. ¶ 6), and that Akron Children's Hospital "implemented its policy and terminated Plaintiffs according to" the CMS Mandate (Compl. ¶ 27). These allegations are woefully insufficient to establish Defendant as a federal government actor.

Plaintiff appears to rely on the "state compulsion test" to establish that Akron Children's Hospital is a government actor. (Compl. ¶ 6.) However, the Sixth Circuit case Plaintiffs cite in the Complaint directly contradicts their argument. *Wolotsky v. Huhn*, 960 F.2d 1331 (6th Cir. 1992) (finding that private mental health provider that contracted with and received funds from the state of Ohio was *not* a state actor for purposes of civil rights claims).

> The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert,

> that in law the choice of the private actor is deemed to be that of the state. More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives. In this case, although the state provided a significant portion of the funding of Portage Path, the state did not choose the members of the Board of Trustees, nor did it choose the executive director or make personnel policies or decisions for Portage Path. Thus, nothing in the record suggests that the state exercised such coercive power or provided such encouragement as to make Portage Path's personnel decision state action.

*Wolotsky*, 960 F.2d at 1335 (citations omitted); *see also Thomas v. Nationwide Children's Hosp.*, 882 F.3d 608, 612 (6th Cir. 2018) ("[T]he frequent reality that the State regulates private entities or cooperates with them does not transform private behavior into state behavior."); *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1931 (2019) ("[T]he fact that the government licenses, contracts with, or grants a monopoly to a private entity does not convert the private entity into a state actor . . . ."); *Beckerich v. St. Elizabeth Med. Ctr.*, No. CIV 21-105-DLB-EBA, 2021 WL 4398027, at *3 (E.D. Ky. Sept. 24, 2021) ("Private hospitals, no matter how much federal funding they may receive, are generally not state actors for purposes of constitutional questions.").

The connections between Akron Children's Hospital's COVID-19 vaccine policy and the CMS Mandate are tenuous at best. Although the policy was developed in a manner that would comply with the CMS Mandate, it was implemented well in advance of the government's deadline, and Akron Children's Hospital continued to move forward with the policy even while enforcement of the CMS Mandate was stayed by a federal court injunction, with no guarantee it would ever be enforced. Indeed, Defendant's deadline for employees to comply with the policy occurred two days prior to the Supreme Court's decision lifting the stay on enforcement. The allegations in the Complaint simply do not support the theory that the federal government acted in a coercive manner with respect to Akron Children's Hospital's decisions regarding the religious exemption requests of Plaintiffs or others.

Briefly stated, Plaintiffs' conclusory allegations that Akron Children's Hospital is a government actor are entirely insufficient to create a plausible claim for relief in connection with their First Amendment claim. Accordingly, Plaintiffs have failed to state a plausible claim for relief, and the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

    **D.    Plaintiffs' Complaint fails to establish subject-matter jurisdiction because there is no basis for the requested remedy in federal statutory or common law.**

In addition to their failure to adequately allege that Defendant is a government actor, Plaintiffs have failed to state a cognizable cause of action in connection with the alleged First Amendment violations that would provide this Court jurisdiction over the claims. Plaintiffs allege that the Court has jurisdiction over their claim under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). However, Plaintiffs have not asserted a cognizable cause of action supporting subject-matter jurisdiction based on either federal question or civil rights.

Plaintiffs rely exclusively on 28 U.S.C. § 2201, the Declaratory Judgment Act, to assert their First Amendment claim. True to its name, the Declaratory Judgment Act only provides for declaratory relief as a separate remedy *where there is another basis for jurisdiction,* and by itself does not establish an independent basis for federal jurisdiction. *Seibert v. Baptist*, 594 F.2d 423, 428 (5th Cir.), *on reh'g*, 599 F.2d 743 (5th Cir. 1979) ("That this statute alone will not support plaintiff's cause of action is apparent for two reasons. First, the declaratory judgment sections do not establish an independent basis for federal jurisdiction, but rather only establish a separate remedy available in cases where jurisdiction otherwise exists."); *Aguilera v. Dist. Dir.*, 423 F. App'x 916, 918 (11th Cir. 2011) ("The Declaratory Judgment Act does not establish an independent basis for federal jurisdiction.").

Although there is no indication in the Complaint of any other basis for their cause of action, to the extent that Plaintiffs are bringing their claim as a common law First Amendment action, essentially a constitutional tort, there is similarly no basis for them to do so. The U.S. Supreme Court has authorized common law constitutional claims against federal actors only in very limited circumstances. The Supreme Court first authorized such an action in *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). In the 50 years since that decision, the Supreme Court has significantly limited the circumstances for *Bivens* remedies and has only allowed such claims to proceed under the Fourth, Fifth, and Eighth Amendments. *See id.*; *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980). Indeed, the Supreme Court has declined to extend *Bivens* to claims under the First Amendment, including in an action by an employee challenging adverse employment action by a federal employer. *Bush v. Lucas*, 462 U.S. 367 (1983). The Supreme Court has also declined to extend *Bivens* to claims against private entities allegedly acting under color of federal law. *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001), syllabus ("*Bivens*' limited holding may not be extended to confer a right of action for damages against private entities acting under color of federal law."); *Minneci v. Pollard*, 565 U.S. 118, 130 (2012) (declining to extend *Bivens* to Eighth Amendment claim against personnel of privately operated federal prison). The Sixth Circuit has also declined to extend *Bivens* to First Amendment claims. *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 522–23 (6th Cir. 2020) ("The problem for Callahan is not just that there has been a long drought since the Court last recognized a new *Bivens* action or even that the Court has cut back on the three constitutional claims once covered. What's harder still is that the Court has never recognized a *Bivens* action for any First Amendment right . . . , and it rejected a First Amendment retaliation claim decades ago for federal employees . . . .").

Here, Plaintiffs have failed to allege any cognizable cause of action under federal statutory or common law. Accordingly, they have no basis for federal question jurisdiction under 28 U.S.C. § 1331 or civil rights jurisdiction under 28 U.S.C. § 1343. As a result, the Complaint must also be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**V.     CONCLUSION**

For the reasons set forth above, Defendant requests that this Court grant its motion and dismiss Plaintiff's Complaint in its entirety.

Respectfully submitted,

*/s/ Mark I. Wallach*
Mark I. Wallach (Reg. No. 0010948)
 Email: mwallach@walterhav.com
 Direct Dial: 216-928-2939
Russell T. Rendall (Reg. No. 0089901)
 Email: rrendall@walterhav.com
 Direct Dial: 216-658-6237
Alexandra C. Eckrich (Reg. No. 0099133)
 Email: aeckrich@walterhav.com
 Direct Dial: 216-658-6234
WALTER | HAVERFIELD LLP
The Tower at Erieview
1301 E. Ninth Street, Suite 3500
Cleveland, Ohio 44114

*Attorneys for Defendant*
*Children's Hospital Medical Center of Akron*

**CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that this case is currently unassigned to a case management track and, therefore, is subject to the 20-page limitation set forth in L.R. 7.1(f). Accordingly, *Defendant's Motion to Dismiss* complies with that page limitation.

*/s/ Mark I. Wallach*
Mark I. Wallach

**CERTIFICATE OF SERVICE**

A copy of the foregoing *Defendant's Motion to Dismiss* has been filed this 12th day of April, 2022, through the Court's electronic filing system. All parties may access the foregoing via the Court's electronic filing system.

*/s/ Mark I. Wallach*
*One of the Attorneys for Defendant*
