## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN TESSANNE, et al., | ) | CASE NO. 5:22-CV-00354 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES E. FLEMING |
| | ) | |
| vs. | ) | |
| | ) | |
| CHILDREN'S HOSPITAL MEDICAL | ) | |
| CENTER OF AKRON, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

The Court has been asked to determine whether Plaintiffs Bryan Tessanne and Richard Brimer's Complaint against Defendant Children's Hospital Medical Center of Akron (the "Hospital") states a claim upon which this Court may afford them relief. (ECF No. 9, Mtn. to Dismiss). Plaintiffs claim that the Hospital's COVID-19 employee vaccination policy, which required existing employees to receive a COVID-19 vaccine in exchange for their continued employment, violates their First Amendment rights to freely exercise their sincerely held religious beliefs. (ECF No. 1, Compl., PageID# 8–9). The Hospital argues that it is a private entity rather than a government actor, and therefore the First Amendment neither applies to its vaccination policy nor confers subject matter jurisdiction on this Court. (ECF No. 9, PageID# 42). Plaintiffs counter that a mandate from the Centers for Medicare and Medicaid Services ("CMS"), which threatened the Hospital's Medicare and Medicaid funding if the Hospital did not implement a COVID-19 vaccination policy for its employees, transformed the Hospital into a government actor. (ECF No. 12, Br. in Opp. to Mtn. to Dismiss, PageID# 60). The Court finds that the Hospital is not a government actor, and this Court lacks subject matter jurisdiction to hear this case. The Hospital's Motion to Dismiss is therefore GRANTED.

1

I.     FACTUAL BACKGROUND

A.     The CMS Mandate and the Hospital's Policy

On November 5, 2021, CMS published an interim final rule requiring facilities reimbursed for services performed on behalf of Medicare and Medicaid recipients to develop mandatory COVID-19 vaccination policies for employees (the "Mandate"). (ECF No. 1, PageID# 2); *see* Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61,555 (Nov. 5, 2021). The Mandate advises health care facilities that they "may also be required to provide appropriate accommodations, to the extent required by Federal law, for employees who request and receive exemption from vaccination because of a disability, medical condition, or sincerely held religious belief, practice, or observance." 86 Fed. Reg. 61,569. Facilities are afforded discretion to establish exemption processes and procedures to implement the religious exemption. *Id.* at 61,572. The Mandate required healthcare workers to be vaccinated against COVID-19 by January 4, 2022. (ECF No. 1, PageID# 2); 86 Fed. Reg. 61,555.

The Mandate was challenged in federal court, and enforcement was temporarily enjoined. *Biden v. Missouri*, 142 S. Ct. 647 (2022). After the Supreme Court decided that the Mandate was constitutional, CMS issued new guidance requiring healthcare workers to receive their first vaccine dose by February 14, 2022, and second dose by March 15, 2022. (ECF No. 1, PageID# 3); DEPARTMENT OF HEALTH & HUMAN SERVICES, GUIDANCE FOR THE INTERIM FINAL RULE – MEDICARE AND MEDICAID PROGRAMS; OMNIBUS COVID-19 HEALTH CARE STAFF VACCINATION, Ref. QSO-22-09-ALL (Jan. 14, 2022), https://www.cms.gov/files/document/qso-22-09-all-injunction-lifted-expired.pdf (last visited Apr. 18, 2023).

While official enforcement of the Mandate was enjoined, the Hospital decided to move forward with a mandatory vaccination policy for its employees (the "Policy"). (ECF No. 1,

2

PageID# 3, 6; ECF No. 9, PageID# 38). Despite the Hospital's election to implement its Policy in the absence of an active Mandate, Plaintiffs allege that the Policy "was occasioned by the mandates of the Federal Government and the threats that [underlie] those mandates, namely that the institutions may be ineligible to receive Medicare and Medicaid money if they do not enforce compliance [with the CMS policy]." (ECF No. 1, PageID# 3). *See* 86 Fed. Reg. 61,569.

### B. The Hospital Implements the Policy

The Hospital's Policy required employees to receive a vaccination or an exemption by January 11, 2022. (ECF No. 1, PageID# 3; ECF No. 9, PageID# 38). The Hospital claims that its religious exemption policy tracks with the Mandate's language, which bases exemptions on federal law. (ECF No. 9, PageID# 38). Plaintiffs allege that the Hospital denied hundreds of requests for religious exemption from the Policy, including theirs. (ECF No. 1, PageID# 3).

Unvaccinated and unexcused employees were to be placed on suspension as of January 11, 2022. (ECF No. 1, PageID# 4). The Policy included a grace period, which gave suspended employees until January 27, 2022, to receive a vaccination or face termination. (ECF No. 1, PageID# 4; ECF No. 9, PageID# 39). The Policy also included a second grace period, permitting terminated employees to receive reinstatement if they provided proof of vaccination by February 27, 2022. (*Id.*).

Plaintiffs applied for exemptions from the Policy based on their sincerely held Christian beliefs. (ECF No. 1, PageID# 4–6). They allege that their applications were summarily denied, and that the Hospital did not engage in a meaningful, interactive review process despite Plaintiffs' explanations of their religious beliefs. (*Id.* at PageID# 6). Pursuant to the Policy, Plaintiffs were eventually terminated. (*Id.*). Plaintiffs have now sued the Hospital, seeking a declaration that the

Policy violated their First Amendment rights to freely exercise their religious beliefs. (*Id.* at PageID# 8–10).

## II.  **MOTION STANDARD**

The Hospital filed a Motion to Dismiss this case under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. (ECF No. 9). The Court must first determine whether it has subject matter jurisdiction under Rule 12(b)(1), since a lack of subject matter jurisdiction renders the Hospital's Rule 12(b)(6) motion moot. *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)). Title 28 U.S.C. § 1331 provides for what is commonly referred to as federal question jurisdiction: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Determining whether a federal court has federal question jurisdiction requires the Court to look beyond the plaintiff's characterization of his claim and "see whether the alleged claim actually 'arises under' the Constitution or federal statutes and is not made solely for the purpose of obtaining jurisdiction." *Bush v. State Indus., Inc.*, 599 F.2d 780, 784 (6th Cir. 1979).

When a defendant challenges subject matter jurisdiction, "the plaintiff has the burden of proving jurisdiction in order to survive the motion." *Moir*, 895 F.2d at 269 (citing *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir. 1986)). A facial attack like that which the Hospital asserts "challenges the sufficiency of the pleading, and the court takes the allegations in the complaint as true and construes them in the light most favorable to the plaintiff." *Cox v. Bd. of Cnty. Comm'rs of Franklin Cnty.*, 436 F. Supp. 3d 1070, 1077 (S.D. Ohio 2020) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A case is properly dismissed for lack of

4

subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (6th Cir. 1994).

### III. <u>DISCUSSION</u>

#### A. The Hospital's Motion to Dismiss

1. *The Declaratory Judgment Act*

The legal authority cited by both parties explains that the Declaratory Judgment Act, 28 U.S.C. § 2201, does not supply the Court with an independent basis for subject matter jurisdiction; the Declaratory Judgment Act requires an additional "federal question" to generate a federal district court's subject matter jurisdiction. *See, e.g.*, *Denson v. Donald J. Trump for Pres., Inc.*, 530 F. Supp. 3d 412, 417 (S.D.N.Y.) (predicating subject matter jurisdiction on the Declaratory Judgment Act **and** a plausibly plead First Amendment claim); *Seibert v. Baptist*, 594 F.2d 423, 428 (5th Cir.), *on reh'g*, 599 F.2d 743 (5th Cir. 1979) (finding no subject matter jurisdiction when the plaintiff's complaint against IRS officials raised the Declaratory Judgment Act, 42 U.S.C. §§ 1983 and 1985, and the Fourth and Fifth Amendments as bases for jurisdiction, but the statutory and constitutional claims failed to state a valid cause of action); *Aguilera v. Dist. Dir.*, 423 F. App'x 916, 918 (11th Cir. 2011) (affirming dismissal for lack of subject matter jurisdiction when the plaintiff alleged the Declaratory Judgment Act, the Administrative Procedures Act, and the Mandamus Act as jurisdictional bases, but the plaintiff's APA and Mandamus Act claims failed to state a claim upon which relief could be granted).

Indeed, it is well settled that "[t]he Declaratory Judgment Act does not create an independent basis for federal subject matter jurisdiction." *Heydon v. MediaOne of Southeast Michigan, Inc.*, 327 F.3d 466, 470 (6th Cir. 2003) (citing *Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–72 (1950)); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240 (1937)

(explaining that the Declaratory Judgment Act is procedural only). Since the Act merely provides the court with discretion to fashion a remedy, the court must already have subject matter jurisdiction before the Act may be invoked. *Id.* (citing *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952); *King v. Sloane*, 545 F.2d 7, 8 (6th Cir. 1976)).

Plaintiffs base jurisdiction on the Declaratory Judgment Act and the First Amendment. Since the Declaratory Judgment Act alone cannot invoke this Court's jurisdiction, the question before the Court is whether the First Amendment provides Plaintiffs with a valid cause of action against the Hospital.

### 2. *State Compulsion*

As a private entity, the Hospital moves to dismiss Plaintiffs' First Amendment claim because, generally, "most rights secured by the Constitution are protected only against infringement by governments." *Luger v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 936 (1982) (quoting *Flagg Bros. Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). There are certain legal doctrines, however, that transform private entities into government actors for the purpose of enforcing individual, constitutional rights. Plaintiffs argue that the Hospital should be considered a governmental actor, and their Complaint not dismissed, because the Policy is fairly attributable to the government, to wit: Plaintiffs claim that the Policy was occasioned by, and in direct response to, the Mandate. (ECF No. 12, PageID# 55).

Relevant here, "a State is responsible for the discriminatory act of a private party when the State, by its law, has compelled the act." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970) (expressing what is commonly known as the "state compulsion" test) (emphasis added). "The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be

6

that of the state." *Wolotsky v. Huhn*, 960 F.2d 1331, 1335 (6th Cir. 1992) (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982)).

For the Hospital to be a state actor, the Court must find (1) that the deprivation of rights at issue was caused by the Hospital's adherence to a rule of conduct imposed by the government; and (2) that the Hospital "may be fairly said to be a state actor." *Luger*, 457 U.S. at 937. "More than mere approval or acquiescence in the initiatives of the private party is necessary to hold the state responsible for those initiatives." *Id.* (citing *Blum*, 457 U.S. at 1004) (emphasis added). Critically, a private actor's deviation from a relevant government policy suggests that the private actor's conduct cannot "be ascribed to any governmental decision." *Luger*, 457 U.S. at 939.

Plaintiffs argue that, since the Mandate prompted the Hospital's Policy, the Hospital must be a government actor properly subject to their First Amendment claim. (ECF No. 1, PageID# 60). Plaintiffs rely on both *Luger* and *Nat'l Fed. Of Indep. Bus. v. Sebelius*, 567 U.S. 519, 581 (2012), in which the Supreme Court determined that the federal government could not compel state governments to implement the Affordable Care Act's ("ACA") Medicaid expansion by conditioning the state's receipt of federal Medicaid funds on compliance with the latter. Plaintiffs encourage this Court to find that the Mandate is as much a "gun to the head" to the Hospital as the ACA's Medicaid expansion was to state governments charged with implementing it. *See*, *id*.

But Plaintiffs Complaint admits that the Policy is a departure from the Mandate in several key respects. First, the Hospital implemented the Policy when enforcement of the Mandate was enjoined, meaning there was no "rule of conduct imposed by the government" for the Hospital to follow. *See Luger*, 457 U.S. at 937. Plaintiffs' Complaint admits that the Hospital's Mandate required employees to be vaccinated by January 11, 2022, which predates the Supreme Court's lifting of the injunction on the Mandate by two days. (ECF No. 1, PageID#3, ¶ 4). The Hospital

7

could not have known the outcome of *Biden v. Missouri* when it suspended unvaccinated employees; the Supreme Court could have permanently enjoined the Mandate, and the employees placed on suspension on January 11, 2022, still would have been subject to termination under the Hospital's Policy.

Second, Plaintiffs claim that the Hospital's Policy was in contravention of the Mandate because the Hospital did not engage in the meaningful review process of Plaintiffs' exemption applications required by the Mandate. (ECF No. 1, PageID# 6, ¶¶ 24–26). Under *Luger*, failure to comply with a rule of conduct establishes private, not state, action. *See Luger*, 457 U.S. at 940 (finding that the defendant's failure to follow the statute at issue "could in no way be attributed to a state rule or state decision," and therefore, that the defendant's conduct was purely private). Absent compulsion by an enforceable rule or, had it been enforceable, absent compliance with the rule, there are no grounds to support a finding that the Hospital is a state actor.

### 3. *Constitutional Torts*

Without state action, the only way that Plaintiffs can assert a First Amendment claim against the Hospital directly would be as a "constitutional tort" under *Bivens* and its progeny. *See Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). In *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001), the Court was asked to find "a right of action for damages against private entities acting under color of federal law." Specifically, the plaintiff sued a private entity that was operating a halfway house pursuant to a contract it had with the Bureau of Prisons. *Id.* at 63. The Court observed that *Bivens* is intentionally narrow and aimed only at deterring federal officers from violating the constitutional rights of others, and only where the plaintiff lacks "*any alternative remedy* for harms caused by an individual officer's unconstitutional conduct." *Id.* at 521 (emphasis in original). The Court ultimately declined to extend *Bivens* to *Malesko*, not only

because the plaintiff had alternative tort remedies, but because plaintiff's desired extension of *Bivens* to a private corporation was inconsistent with the *Bivens* rationale. *Id.* at 72–73.

Although Plaintiffs flatly state that "this case does not present a constitutional tort claim, but a declaratory judgment claim," the Court is compelled to clarify that *Bivens* could not be interpreted, in good faith, to confer a cause of action on Plaintiffs against the Hospital. (ECF No. 12, PageID# 59). This case does not involve federal officers engaging in unconstitutional conduct; like *Malesko*, Plaintiffs seek to hold a private entity purportedly acting under color of federal law responsible for the harms they have suffered. The Plaintiffs' claims, like those in *Malesko*, are inconsistent with the rationale in *Bivens* and cannot survive. The Declaratory Judgment Act cannot alone confer subject matter jurisdiction on this Court and a constitutional tort claim is unavailable to Plaintiffs. As a result, this Court does not have subject matter jurisdiction. In the absence of subject matter jurisdiction, the Hospital's 12(b)(6) Motion to Dismiss is moot.

### 4. Plaintiffs' Uncaptioned Motion for Leave to Amend Complaint

Within the body of Plaintiffs' Brief in Opposition to the Hospital's Motion to Dismiss, Plaintiffs summarily ask for leave to cure any deficiencies that the Court finds in their Complaint. (ECF No. 12, PageID# 64). Although the Federal Civil Rules encourage courts to "give leave when justice so requires," it need only do so when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject for relief." *Foman v. Davis*, 371 U.S. 178, 182 (1962); Fed. R. Civ. P. 15(a). Here, the First Amendment does not supply a valid cause of action against the Hospital. Plaintiffs' request to amend the complaint does not allege that the amendment will contain facts that would overcome the jurisdictional defect of their initial Complaint. Plaintiffs also did not attach a copy of the proposed amendment for the Court's consideration. *See Kuyat v. BioMimetic Therapeutics, Inc.*, 747 F.3d 435, 444 (6th Cir. 2014) (affirming denial of motion to

9

amend complaint where the plaintiffs' motion sought leave to amend in a single sentence within the body of another motion, and where no proposed amended complaint was filed with the court). Accordingly, Plaintiff's Motion for Leave to Amend Complaint is denied.

### IV. CONCLUSION

Without a federal question before it, this Court lacks the power to hear this case. Plaintiffs have not asserted a valid federal claim against the Hospital. Furthermore, Plaintiffs' summary request to amend their Complaint lacks any indication that an amended pleading would cure the present jurisdictional deficiency. Therefore, the Hospital's Motion to Dismiss under Fed. R. Civ. P. 12(b)(1) is GRANTED, the Hospital's Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) is MOOT, and Plaintiffs' Motion for Leave to Amend Complaint is DENIED.

**IT IS SO ORDERED.**

**Dated: May 10, 2023**

*Charles Fleming*

**CHARLES E. FLEMING**
**U.S. DISTRICT COURT JUDGE**